# 95 DTA 149

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**CIRCUITO REGIONAL DE CAGUAS, HUMACAO Y GUAYAMA**

VICTOR MANUEL CUADRA ORTIZ
Querellante-Recurrido

v.

REDONDO CONSTRUCTION CORP.
Querellado-Peticionario

Núm. KLCE-95-00022

San Juan, Puerto Rico, a 23 de mayo de 1995.

Panel integrado por su presidente, Juez González Román
y los Jueces Ortiz Carrión y Segarra Olivero

Segarra Olivero, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El querellado Redondo Construction (en adelante Redondo) recurre de una determinación del Tribunal de Primera Instancia declarando no ha lugar una Moción de Sentencia Sumaria en la que se solicitaba que el tribunal se declarara sin jurisdicción para entender en la querella

por despido injustificado radicada por el aquí recurrido. Alega la parte recurrente que al momento de radicarse la referida querella, el despido del querellante estaba sometido al procedimiento de arbitraje establecido en el convenio colectivo vigente entre Redondo y el Sindicato de Equipo Pesado, Construcción y Ramas Anexas de Puerto Rico, organización laboral que representa al obrero recurrido.

A petición de la parte recurrente, ordenamos la paralización de los procedimientos en el Tribunal de Primera Instancia, hasta tanto este Tribunal se pronunciara sobre los méritos del caso. Concedimos además un término de diez días a la parte recurrida para que mostrara causa por la cual no debiera expedirse el auto solicitado. El querellante-recurrido ha comparecido. Su argumentación no nos persuade, por lo que ordenamos la expedición del auto y la revocación de la resolución recurrida.

## I

Según la querella radicada en el caso de autos, el 25 de enero de 1994 el obrero recurrido se reportó al Fondo del Seguro del Estado tras sufrir una lesión en el curso de su empleo con la compañía querellada. Dos días más tarde, fue despedido. El caso se sometió a la consideración de la árbitro Verónica Ríos, del Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos. La vista del caso se celebró el día 2 de febrero de 1995. Al momento de redactarse esta sentencia no se ha emitido el laudo.

El 25 abril de 1994 el obrero recurrido fue dado de alta definitiva en el Fondo del Seguro del Estado, sin determinación de incapacidad. Ese mismo día, se alega, el querellante solicitó a la parte querellada que lo reinstalara en su empleo. Su petición fue denegada, por lo que radicó la querella solicitando reinstalación al amparo del Artículo 5A de la Ley Número 45 del 18 de abril de 1935, conocida como Ley de Compensaciones por Accidentes en el Trabajo. En la querella se alega que **el despido del 27 de enero de 1994 obedece a una actitud discriminatoria del patrono contra un obrero reportado al Fondo del Seguro del Estado.**

Redondo contestó la querella, alegando que el tribunal carecía de jurisdicción, ya que no se había agotado el remedio arbitral estipulado en el convenio suscrito por la compañía querellada y el Sindicato de Equipo Pesado, Construcción y Ramas Anexas. Sostuvo la querellada que el despido estuvo motivado por la indisciplina e insubordinación del querellante, y que éste no sufrió accidente laboral alguno. Posteriormente, Redondo presentó Solicitud de Sentencia Sumaria, la que fue denegada de plano. Solicitada al tribunal la reconsideración y la formulación de hechos incontrovertidos bajo la Regla 36.4 de Procedimiento Civil, 32 L.P.R.A. Ap. II, ambas peticiones fueron denegadas, y se radicó el recurso que nos ocupa.

En su escrito de oposición al recurso el obrero recurrido plantea que la controversia de autos *"nada tiene que ver con un despido o una suspensión, sino más bien con los derechos del trabajador recurrido al amparo de la ley de Compensaciones por Accidentes del Trabajo...la controversia no puede someterse a arbitraje puesto que no está cubierta por el convenio".*

El Convenio Colectivo suscrito por la compañía recurrente y el Sindicato de Equipo Pesado, Construcción y Ramas Anexas establece en su artículo IX, relativo a **Disposiciones Generales:**

*"K. Reclamación por despido: En caso de que el Patrono despida a un empleado sin justa causa, el empleado y/o el Sindicato, tramitarán dicho despido de acuerdo con las disposiciones de este Convenio, intituladas "Quejas y Agravios".*

En el artículo XIV, correspondiente a Quejas y Agravios, se dispone:

*"B: Es la disposición de las partes que cualquier clase de controversia, disputa, conflicto, así como diferencias en la interpretación de este Convenio entre el Sindicato y el Patrono así como también cualquier controversia, disputa o conflicto entre el Sindicato y el Patrono sobre la suspensión o despido de cualquier número de empleados, será resuelto de forma final, firme e inapelable siguiendo los pasos que se exponen a continuación y siempre y cuando el laudo sea conforme a derecho y a este Convenio."*

Partiendo de lo expuesto por el propio recurrido en la querella radicada ante el Tribunal de Primera Instancia, nos parece evidente su intento de utilizar el mecanismo judicial para cuestionar una actuación patronal --el despido de enero de 1994-- en forma colateral al procedimiento de arbitraje ya en curso. El propósito de la querella es hacer ver el despido como un acto discriminatorio, haciendo uso del remedio provisto por la Ley de Compensaciones por Accidentes del Trabajo. No se trata --si cabe la expresión-- de un despido distinto, sino de un ataque separado a la misma decisión patronal. Desde esa perspectiva, no podemos permitir la continuidad de una reclamación en violación a las claras disposiciones del convenio colectivo. El convenio colectivo es la ley entre las partes. *Martínez Rodríguez v. Autoridad de Energía Eléctrica,* ___ D.P.R. ___ (1993), **93 J.T.S. 108**, a la pág. 10918; *J.R.T. v. Vigilante,* ___ D.P.R. ___, **90 J.T.S. 30**, a la pág. 7513; *J.R.T. v. Junta Adm. Muelle Mun. de Ponce,* 122 D.P.R. 318, 333 (1988). Acordado por las partes que **toda controversia o disputa** debe someterse a arbitraje --enfatizando de tal manera que ese sea el procedimiento en casos de despido que así se hace constar en dos secciones separadas del convenio-- le está vedado a un obrero radicar de forma independiente una querella ante los tribunales, en ausencia de una de las causas reconocidas para descartar el arbitraje. Ver *Martínez v. Autoridad de Energía Eléctrica, supra; Pagán v. Fundación Hospital Dr. Pila,* 114 D.P.R. 224, 231-232 (1983). Reconocemos que el proceso en este caso no ha sido tan expedito como sería deseable (ha pasado casi año y medio desde el despido), pero la dilación en el arbitraje, por sí sola, no justifica la preterición de ese cauce. *Pagán v. Fundación Hospital Dr. Pila, supra.*

En lo que aparenta ser una desviación de la línea argumentativa de la querella, en su escrito de oposición el querellante sostiene que la controversia pendiente de resolución ante la árbitro es una separada y distinta a la planteada ante el Tribunal de Instancia. Alega que la controversia expuesta en la querella al amparo de la Ley de Compensaciones por Accidentes en el Trabajo no tiene que ser sometida a arbitraje ya que la negativa del patrono a reinstalar a un obrero que estuvo reportado al Fondo del Seguro del Estado no equivale a un despido.

No le asiste la razón. El Tribunal Supremo resolvió recientemente que cuando un empleado reportado al Fondo del Seguro del Estado solicita la reinstalación y no está presente alguna de las excepciones que contempla la ley para no reinstalar al empleado, y tampoco está presente uno de los supuestos establecidos por la Ley Número 80 del 30 de marzo de 1976, 29 L.P.R.A. sec. 185 considerados como justa causa para el despido, se configura un caso de despido injustificado. *Vélez Rodríguez v. Pueblo International Inc.,* ___ D.P.R. ___ (1994), **94 J.T.S. 37**. Así, la negativa de Redondo de reinstalar al querellante constituye un despido y es, por lo tanto, una controversia que debe resolverse a través del procedimiento de arbitraje pautado en el convenio.

Plantea el querellante que el someter la controversia sobre reinstalación al proceso de arbitraje le privaría de remedios reconocidos por la Ley de Compensaciones por Accidentes del Trabajo, ya que ese estatuto permite la reclamación de daños y perjuicios causados por la actuación patronal, mientras que en el acuerdo de sumisión ante el árbitro no se estipuló la concesión de daños.

670

La existencia de legislación especial, como es la Ley de Compensaciones por Accidentes del Trabajo, no autoriza a la parte perjudicada a preterir el mecanismo de resolución de disputas establecido en el convenio. El Tribunal Supremo, ante un planteamiento similar, determinó que sostener que los derechos que surgen de los convenios se pueden arbitrar pero no aquellos que surgen de la ley o la Constitución significaría destruir la negociación colectiva, ya que gran parte de los derechos que surgen de los convenios se pueden conectar en una forma u otra con la Constitución o las leyes. *Pérez v. Autoridad de Fuentes Fluviales, supra,* a la pág. 1293. Se descartó la posibilidad de un conflicto de naturaleza constitucional.

*"El peticionario alega que si se le obliga a arbitrar a tenor con lo que pactó en los convenios colectivos, se le derrota su derecho constitucional a reclamar judicialmente el pago de compensación extraordinaria por horas extra. No estamos de acuerdo. Su derecho constitucional a dicha compensación extraordinaria garantizado por la Sec. 16 del Art. II de la Constitución no deroga su derecho **también constitucional** a organizarse y a negociar colectivamente con su patrono, derecho que le garantiza la Sec. 17 del mismo artículo. Fue precisamente en el ejercicio de su derecho constitucional a negociar colectivamente que el peticionario contrató los convenios y las cláusulas de arbitraje que ahora quiere repudiar. La Constitución cubre al peticionario con todas sus cláusulas; no puede invocar una y pretender que las otras no existen."* (Enfasis en el original)

Años más tarde, el Juez Presidente Trías Monge, al redactar la Opinión de *Pagán v. Fundación Hospital Dr. Pila, supra,* rechazó una interpretación del Tribunal Supremo de Estados Unidos contraria a lo resuelto en Pérez:

*"...De nosotros aceptar, por razón de Barrentine, el argumento que rechazamos desde Pérez al efecto de que las controversias laborales fundadas en la Constitución o las leyes pueden ser ventiladas directamente ante los tribunales, sin antes acudir al procedimiento pactado en los convenios, le estaríamos asestando un golpe de muerte al arbitraje laboral en Puerto Rico e inundaríamos nuestro sistema judicial de litigios que pueden resolverse más rápidamente y en modo no menos justo por procedimientos más flexibles. Las normas imperantes en Puerto Rico, antes reseñadas, mantienen el proceso arbitral en todo su vigor al requerir que se agote inicialmente el remedio que el convenio disponga en tal sentido, a menos que exista justa causa para obviarlo. Se protege al trabajador, del otro lado, en cuanto el árbitro no puede violar la política pública y fijar la compensación en una cuantía menor que la ordenada por la Constitución y las leyes."*

Tampoco tiene razón el recurrido al señalar que el árbitro no estaría facultado para imponer la concesión de daños en un caso ante su consideración. Sometido al procedimiento de arbitraje un caso en el que se configura una causa de acción que, presentada ante un tribunal ameritaría la concesión de determinado remedio, no puede el árbitro conceder un remedio inferior en detrimento de los derechos estatutarios del obrero. Si, como en el caso de autos, la ley al amparo de la cual el obrero formula su reclamación concede daños y perjuicios, y en el convenio se estipuló que el laudo debe ser conforme a derecho, el árbitro, aun cuando no se haya establecido así específicamente en el acuerdo de sumisión, tiene la facultad para imponer el remedio contemplado en el estatuto. Lo contrario significaría que el obrero, una vez emitido el laudo a su favor, tendría que recurrir a los tribunales para que allí se le concediera el remedio prescrito en la ley y que no fue adjudicado en el arbitraje. Esto, naturalmente, minaría el propósito de agilizar y simplificar la resolución de disputas que anima la política pública en favor del arbitraje.

## II

La parte recurrente plantea como segundo error el que el Tribunal de Primera Instancia, tras declarar no ha lugar la Moción en Solicitud de Sentencia Sumaria, se negara a redactar las determinaciones de hechos que no están en controversia. Al resolver que el Tribunal de

Primera Instancia carecía de facultad para entender en la controversia ante su consideración, estimamos que no es necesario atender ese planteamiento.

Resolvemos que erró el Tribunal de Primera Instancia al denegar la Moción de Sentencia Sumaria de la compañía recurrente en la que se planteaba la falta de jurisdicción de ese foro; se ordena en consecuencia la revocación de la resolución recurrida.

Así lo pronunció y manda el Tribunal y lo certifica la Secretaria General.

María de la C. González Cruz
Secretaria General

**ESCOLIOS 95 DTA 149**

**1.** Aún así, en la querella se refiere a la *"verdadera razón del despido",* y a que *"... el despido del querellante [es] uno violatorio de una política pública".* Ver página 1 del Apéndice de la Petición de *Certiorari.*

**2.** Entendemos que aún cuando no llegáramos a la determinación de que la negativa a reinstalar equivale a un despido, las partes estarían obligadas a someter el caso a un árbitro; la cláusula de arbitraje del convenio suscrito por la compañía recurrente y el Sindicato dispone que cualquier clase de controversia, disputa o conflicto será resuelto en un procedimiento de arbitraje. Ante una cláusula de arbitraje tan abarcadora, todo asunto no excluido expresamente por las partes debe ser resuelto a través de ese mecanismo. Ver *P.R. Tel Co. v. Unión Ind. de Empleados Telefónicos,* ___ D.P.R. ___ , 1993, **93 J.T.S. 93**, a la pág. 9705; *Junta de Relaciones del Trabajo v. Autoridad de Fuentes Fluviales,* 111 D.P.R. 837, 841 (1982); *Pérez v. Autoridad de Fuentes Fluviales,* 87 D.P.R. 118, 122 (1963).

**3.** En esa ocasión resolvió el Tribunal Supremo que ante una cláusula de arbitraje que obligaba a las partes a llevar al Comité de Ajuste todas las querellas o reclamaciones que pudieran surgir en relación con las disposiciones de los convenios, no podía un obrero radicar una acción ante el Tribunal reclamando el pago de horas extra bajo un planteamiento constitucional.